UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA BOWLES,

        Plaintiff,

v.

COUNTY OF WAYNE,

        Defendant.

_____/

Case No. 23-cv-10973
(Previous Case No. 20-cv-12838)
Honorable Linda V. Parker

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION (ECF NO. 82) AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT (ECF NO. 92)**

On October 22, 2020, Tonya Bowles filed this putative class action lawsuit
against the County of Wayne (hereafter "Wayne County" or "County") asserting
claims arising from the foreclosure and sale of her property due to a tax
delinquency.[1]  Bowles alleges that Wayne County sold the property at a sheriff's
sale for more than the tax delinquency but failed to return to her the surplus
proceeds (i.e., the amount exceeding the delinquency after deducting appropriate
interest, penalties, and fees).  At this juncture, Bowles, on behalf of a putative
class, asserts a takings in violation of the Fifth and Fourteenth Amendments under
42 U.S.C. § 1983.

---

[1] Bowles also brought claims against Wayne County Treasurer Eric Sabree, but he
has since been dismissed.

The matter is presently before the Court on Wayne County's motion for reconsideration of a decision granting in part and denying in part Wayne County's motion to dismiss and Bowles' motion to amend her complaint. Before the Court could rule on Wayne County's motion, Bowles filed her amended pleading and Wayne County moved to dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion also is pending. As both motions raise overlapping arguments, the Court addresses them together below.

## I.      Standard of Review

Pursuant to Eastern District of Michigan Local Rule 7.1(h)(2), motions for reconsideration of non-final orders may be granted on only three grounds: (1) a mistake of the court "based on the record and law before [it] at the time of its prior decision" if correcting the mistake would change the outcome of the prior decision; (2) "[a]n intervening change in controlling law warrants a different outcome"; or (3) "[n]ew facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision." The rule expressly advises that "motions for reconsideration of non-final orders are disfavored." E.D. Mich. LR 7.1(h)(2). A motion for reconsideration "is not properly used as a vehicle to rehash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mt. Pleasant Schs.*, 298 F. Supp. 2d 636, 637

2

(E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 357, 374 (6th Cir. 1998)).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading

3

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may take judicial notice only "of facts which are not subject to reasonable

4

dispute." *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

## II.    Background

Bowles owned property commonly known as 14730 East State Fair in Detroit, Michigan.  Wayne County initiated foreclosure proceedings against the property due to a tax delinquency, which resulted in a foreclosure judgment on March 29, 2017.  The property was sold at a tax auction sale for $14,000.00 on November 16, 2017, which allegedly generated surplus proceeds not returned to Bowles.

After the Michigan Supreme Court held that the retention of such proceeds constitutes an unconstitutional taking, *see Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (2020), Bowles filed this putative class action lawsuit on October 22, 2020, which was assigned Case No. 20-cv-12838.  In her Complaint, Bowles defined the class as "individuals and entities during the relevant statutorily-limited time period who were subject to the same unconstitutional processes by Defendants County of Wayne . . . which resulted in the taking and/or unconstitutional forfeiture of their surplus or excess Equity."[2]  *See* Compl., Case No. 20-cv-12838, ECF No. 1 at PageID.9 ¶ 34.

_____

[2] When Bowles initiated this lawsuit, the Sixth Circuit had not clearly held that the former property owner's interest following a tax auction sale is limited to the

Two months later, Bowles was joined by Bruce Taylor, whose Oakland County property was foreclosed and sold at a tax auction sale, and who claimed the surplus proceeds were not returned to him. *See* Am. Compl., *id.*, ECF No. 17. In a First Amended Complaint, filed December 29, 2020, Bowles and Taylor sought to represent a class of "individuals and entities during the relevant statutorily-limited time period who were subject to the same unconstitutional processes by Defendants [Wayne and Oakland counties and their treasurers] which resulted in the taking and/or unconstitutional forfeiture of their surplus or excess Equity." *Id.* at PageID.175-76 ¶ 60.

---

surplus proceeds, as opposed to the property's fair market value. In September 2023, the Sixth Circuit clarified that the plaintiff's recovery in a § 1983 takings claim is limited to the surplus proceeds. *Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023). The issue may not be fully settled, however. This term, the United States Supreme Court granted a petition for writ of certiorari in *Pung v. Isabella County*, No. 25-95, to answer two questions:

> Whether taking and selling a home to satisfy a debt to the government, and keeping the surplus value as a windfall, violates the Takings Clause of the Fifth Amendment when the compensation is based on the artificially depressed auction sale price rather than the property's fair market value?

> 2. Whether the forfeiture of real property worth far more than needed to satisfy a tax debt but sold for fraction of its real value constitutes an excessive fine under the Eighth Amendment, particularly when the debt was never actually owed?

*See https://www.supremecourt.gov/qp/25-00095qp.pdf.*

6

In a subsequent motion to dismiss, Wayne County challenged Bowles'
standing and adequacy as a class representative in part because she had attempted
to transfer her interest in the property through a quitclaim deed dated after the
foreclosure judgment was entered.  Mot., *id.*, Case No. 20-cv-12838, ECF No. 25.
Wayne County also argued that Bowles' claims were time barred under the two-
year limitations period in the Michigan General Property Tax Act ("GPTA").  *Id.* at
PageID.282.

This Court rejected Wayne County's statute of limitations argument because
the appropriate statute of limitations for a § 1983 claim is the State's statute of
limitations for personal injury actions, which in Michigan is three years.  *See*
*Bowles v. Sabree*, No. 20-12838, 2022 WL 141666, at *9 (E.D. Mich. Jan. 14,
2022) (citations omitted).  The Court found Bowles' claims timely under the
appropriate limitations period, rejecting Wayne County's assertion that the time
began to run when the property was foreclosed as opposed to when surplus
proceeds were recovered at the tax auction sale.  *Id.* (citing *Grainger, Jr. v. Cnty. of*
*Ottawa*, No. 1:19-cv-501, 2021 WL 790771, at *6 (W.D. Mich. Mar. 2, 2021).
Relying on the September 5, 2017 sale date identified in Bowles' pleading—a date
Bowles eventually amended as the sale in fact occurred on November 11, 2017—
and considering the Michigan Supreme Court's orders suspending statutes of
limitations due to the emergency arising from COVID-19, the Court concluded that

Bowles' § 1983 claims were timely filed. *Id.* (collecting cases interpreting the Michigan Supreme Court's orders as tolling statutes of limitations).

Wayne County filed a motion for reconsideration, arguing in part again that the GPTA's two-year limitations period applies to Bowles' claims. Mot., Case No. 20-12838 (filed Jan. 28, 2022), ECF No. 50. Wayne County further argued that the Court's reliance on the COVID-19 tolling orders was a mistake, as the Michigan Supreme Court ruled that the Governor lacked the authority to renew her declaration of a state of emergency or state of disaster based on the pandemic after April 30, 2020. *Id.* Wayne County argued that the statute of limitations on Bowles' claims therefore began to run again on April 30, 2020, and expired before she filed this lawsuit. *Id.*

The Court denied Wayne County's motion for reconsideration. *Bowles*, 2022 WL 4078891 (Sept. 6, 2022). With respect to the County's statute of limitations argument, the Court pointed out that it relied on the Michigan Supreme Court's tolling orders, not the Governor's executive orders. *Id.* at *4. Wayne County did not argue, much less show, that the Michigan Supreme Court lacked the administrative authority to toll statutes of limitations during the pandemic or that its administrative orders were based on the Governor's executive authority. *Id.*

8

In the interim, Bowles and Taylor had filed a motion for class certification, which the Court granted on January 14, 2022. *Bowles*, 2022 WL 141666. In that decision, the Court certified the following class:

> All property owners formerly owning property from within the counties of Wayne and Oakland who had said property seized by Defendants via the General Property Tax Act, MCL 211.78 et seq., which was worth more and/or was sold at tax auction for more than the total tax delinquency and was not refunded the excess/surplus equity, and this sale occurred before July 17, 2020, but within three years of the filing of this lawsuit [i.e. October 22, 2017], and excluding any property owner who has filed their own post-forfeiture civil lawsuit to obtain such relief.

*Id.* at *17. Oakland County thereafter settled with class members whose properties were sold by that county.

As this case proceeded, several separate actions were filed by former owners of foreclosed Wayne County property, which this Court consolidated with the action filed by Bowles and Taylor. Among these cases were: (a) Case No. 22-cv-11647, which Norman Poydras and V&V Taylor Distributing LLC joined on November 22, 2022; and (b) Case No. 23-cv-10524, filed by Melvin Chuney, Jr., Keenan Jackson, and Darlene Henderson. After approving the Oakland County settlement, the Court severed the claims brought by former owners of Wayne County property, directed the Clerk of the Court to assign a new case number to those claims, and directed Bowles to file an amended complaint restricted to the

9

then-pending claims against Wayne County. (*See* ECF No. 1.) Bowles filed the required amended complaint ("Second Amended Complaint") on June 1, 2023.[3] (ECF No. 8.)

Meanwhile, Wayne County appealed the Court's decision on its motion to dismiss and Bowles' motion for class certification. "For the first time on appeal," Wayne County contended that there was no surplus from the sale of Bowles' property. *See Bowles v. Sabree*, 121 F.4th 539, 551 (6th Cir. 2024). In a decision issued on November 4, 2024, the Sixth Circuit declined to address the County's surplus argument, finding no evidence to conclude that there was or was not a surplus. *Id.* The Sixth Circuit indicated: "On remand, and perhaps with the benefit of discovery, the parties and the district court can clear up these factual questions." *Id.*

The Sixth Circuit affirmed this Court's holding that the quit claim deed did not deprive Bowles of standing to pursue this action for any surplus proceeds. *Id.* at 549. However, the Sixth Circuit concluded that this Court had not sufficiently analyzed the Rule 23 requirements before certifying the class. *Id*. at 545. It, therefore, vacated the class certification order and remanded for further proceedings. *Id.*

---

[3] In the pleading, Bowles advised that a motion would be forthcoming for leave to further amend the complaint to reflect the consolidated cases and claims. (ECF No. 8 at PageID.55.)

After the Sixth Circuit issued its mandate, Wayne County moved under Federal Rule of Civil Procedure 12(c) to dismiss Bowles' Second Amended Complaint.  (ECF No. 63.)  Wayne County argued that the procedure for former property owners to claim surplus proceeds, set forth in Section 211.78t of the GPTA, was exclusive given the Michigan Supreme Court's holding in *Schafer v. Kent County*, 29 N.W.3d 25 (2024), that *Rafaeli* applied retroactively.  According to Wayne County, Bowles § 1983 claim was therefore no longer viable.  (*Id*.)

Wayne County alternatively argued, again, that Bowles' § 1983 was time barred.  (*Id.*)  Relying on *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), Wayne County maintained that the statute of limitations began to run when the foreclosure judgment was entered on March 31, 2017.  (*Id.*)  With that as the start date, the County argued that Bowles' claims came too late even with the benefit of the Michigan Supreme Court's COVID-19 tolling orders.  (*Id.*)

In a footnote to its Rule 12(c) motion, Wayne County wrote:  "if this case reaches the merits (it should not), the evidence will demonstrate that there were no remaining proceeds after the tax foreclosure sale of Plaintiff's former property, which will also defeat her claim."  (*Id.* at PageID.63 at PageID.1313.)

Two days after the County filed its Rule 12(c) motion, Bowles moved to file her anticipated Third Amended Complaint to reflect the consolidated actions and the changes in the law during the lawsuit's pendency.  (ECF No. 64.)  In addition to

the plaintiffs whose actions were consolidated with this matter, *see supra*, Bowles sought in her Third Amended Complaint to add several new named plaintiffs: Douglas C. Myers, Gerrilyn Sutton, Marcia Johnson, Bashar Yousif, Uchenna Ndubuisi, and Tonya Thompson.  (*See* ECF No. 64-1.)

In response to Bowles' motion for leave to file the amended pleading, Wayne County included the same footnote regarding the lack of surplus proceeds from the sale of her property.  (ECF No. 68 at PageID.1454 n.6.)  Wayne County also argued, as it did in its Rule 12(c) motion, that Section 78t provides the exclusive mechanism for former property owners to claim surplus proceeds from a tax auction sale.  Wayne County further argued that the claims of the eleven proposed additional class representatives are time barred.

On June 4, 2025, the Court granted in part and denied in part Wayne County's Rule 12(c) motion and Bowles' motion for leave to file her Third Amended Complaint.  (ECF No. 77.)  First, the Court rejected Wayne County's argument that Section 78t is the exclusive mechanism to seek relief for owners whose properties were foreclosed and sold *prior to* the GPTA's amendments.  (*Id.* at PageID.1637.)  The Court distinguished *Howard v. Macomb County*, 133 F.4th 566 (6th Cir. 2025), which the County cited in support of its argument.  In *Howard*, the Sixth Circuit found no taking as a result of a foreclosure *after* the GPTA's amendments because a procedure was in place when the foreclosure occurred for a

12

former property owner to claim the surplus proceeds.[4]  (ECF No. 77 at PageID.1637-38.)

In rejecting Wayne County's argument that Section 78t provides the exclusive remedy, this Court also relied on the Supreme Court's holding that "a violation of an owner's Fifth Amendment rights 'allows the owner to proceed *directly* to federal court under § 1983' even where 'the State has provided a property owner with a procedure that may subsequently result in just compensation.'"  (*Id*. at PageID.1638 (quoting *Knick v. Twp. of Scott*, 588 U.S. 180, 191 (2019) (emphasis added)).  This Court also found support in the Sixth Circuit's decision on appeal here.  On appeal, Wayne County had argued that the GPTA's statutory process "preempts a federal suit[,]" to which the Sixth Circuit responded:  "It does not and cannot."  *Bowles*, 121 F.4th at 555 (citing *Knick*, 588 U.S. at 185).  The Sixth Circuit advised: "a plaintiff with a federal constitutional claim under § 1983 can always go straight to federal court."  (ECF No. 77 at PageID.1638-39 (citing *Knick*, 588 U.S. at 185).  As the Sixth Circuit additionally stated in *Howard*:  "By making these procedures [in Section 78t] 'exclusive' the Michigan Legislature meant only to restrict owners' *state* remedies for seeking any surplus.'"  (*Id*. at PageID.1639 (quoting *Howard*, 133 F.4th at 527).)

---

[4] In light of *Howard*, however, the Court found it futile for Bowles to amend her complaint to add individuals whose properties were sold after those amendments: Jackson, Henderson, Yousif, Ndubuisi, and Thompson.  (ECF No. 77 at 1640.)

13

The Court rejected Wayne County's statute of limitations argument as to Bowles, Myers, Sutton, and Johnson.  In doing so, the Court overlooked its initial analysis of Wayne County's argument with respect to Bowles' claim, forgetting the Michigan Supreme Court's COVID-19 tolling orders.  Thus, the Court began from the premise that, regardless of whether the limitations period began to run at the foreclosure or sale, the claims of Bowles, Myers, Sutton, and Johnson were time barred absent some other tolling mechanism.  (*Id*. at PageID.1642-43.)  Relying on federal law concerning class action tolling, as described in *American Pipe & Construction Company v. Utah*, 414 U.S. 538, 551 (1974), and its progeny, the Court concluded that the claims were tolled by *Wayside Church v. Van Buren County*, No. 14-cv-1274 (W.D. Mich. filed Dec. 11, 2014), and/or the filing of the present matter.  (*Id*. at 1644-50.)

In a footnote, the Court addressed Wayne County's own footnotes commenting on the lack of surplus proceeds with respect to the sale of Bowles' property.  (*Id*. at PageID.1639 n.5.)  This Court wrote:

> Wayne County has repeatedly asserted here and on appeal before the Sixth Circuit that there were no surplus proceeds in connection with the tax auction sale of Bowles' property.  Despite the fact that the lack of any surplus proceeds would be relevant to Bowles' standing to bring this lawsuit—as well as her adequacy to serve as a class representative— Wayne County has not attempted to present support for its assertion.  In its pending motion to dismiss and in response to the motion to amend, Wayne County states again that "if this case reaches the merits . . . the evidence will demonstrate that there were no remaining proceeds after the tax foreclosure sale of Bowles' former property . . .."  (ECF No. 63 at

14

PageID.1313 n.12 (emphasis removed); ECF No. 68 at PageID.1454 n.6.)  Until contrary evidence is presented, the Court must accept as true Bowles' allegation that there was a surplus.

(*Id.*)

As indicated, Wayne County now seeks reconsideration of the Court's decision.  Wayne County also moves to dismiss the Third Amended Complaint Bowles filed pursuant to this Court's ruling.

## III.   Discussion

### A.   Surplus

In its motion for reconsideration and motion to dismiss, Wayne County maintains that Bowles lacks a viable takings claim because there was no surplus when it sold her property at auction.  As an initial matter, as set forth previously, Wayne County never premised its previous Rule 12(c) motion or opposition to Bowles' motion to amend her complaint on the lack of surplus proceeds.  The issue, therefore, is not a proper subject for "reconsideration."

With respect to its pending motion to dismiss, Wayne County makes several factual assertions to show that there were no surplus proceeds.  Yet, Wayne County still identifies no evidence in the record supporting those facts.  As a result, as to this argument, the County has not moved the ball any further along the field than it was when the Sixth Circuit rejected it.

In other words, this Court is left with the same "paper-thin record" the Sixth Circuit had before it when considering Wayne County's argument that the sale of Bowles' property generated no surplus. *Bowles*, 121 F.4th at 551. The Court does have, however, Bowles' assertion that there was a surplus. Absent contrary materials which can be considered at this stage, the Court assumes her allegation true. *See Erickson*, 551 U.S. at 94. Contrary to Wayne County's argument, the taxes owed, the actual fees included to cover the auction expenses, and the sale price are factual not legal conclusions.[5]

### B.      Statute of Limitations

Even though the facts have not changed since Bowles filed this lawsuit, Wayne County has raised again and again the statute of limitations as a defense to her § 1983 claim. As summarized earlier, in response to Wayne County's most recent reiteration of its arguments for why Bowles' claims are time barred, this Court relied on *American Pipe* tolling to find her claims timely filed. Specifically, the Court held that *Wayside Church* tolled her § 1983 takings claim, as well as the claims of Myers, Sutton, and Johnson.

---

[5] The fact that Bowles has not submitted a claim pursuant to Section 78t is not evidence that she cannot claim a surplus. As indicated earlier, both the Supreme Court and Sixth Circuit have held that "a plaintiff with a federal claim under § 1983 can always go straight to federal court." *Bowles*, 121 F.4th at 555 (citing *Knick*, 588 U.S. at 185).

Wayne County argues in its motion for reconsideration and motion to dismiss that tolling based on *Wayside Church* is not appropriate. According to Wayne County, the claims of Bowles, Myers, Sutton, and Johnson are, therefore, time barred. The Court finds it unnecessary to reconsider whether *Wayside Church* tolled Bowles' claim, however. This is because the Court's first ruling on the issue, which did not invoke *American Pipe* tolling, still stands. It should have stood as the reason to reject Wayne County's most recent assertions of the defense.

"[F]ederal law determines when a § 1983 claim accrues to trigger the running of th[e] . . . statute of limitations." *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). A claim accrues when the "the plaintiff has a complete and present cause of action." *Id*. (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)). "Put differently, this 'injury-occurrence' or 'occurrence' rule triggers the limitations period on the first day that every element of a claim has occurred such that the plaintiff may sue in court over the claim." *Id*. (quoting *Wallace*, 549 U.S. at 388).

"Whether a plaintiff has a 'complete and present cause of action' under § 1983 turns on the 'specific constitutional right' at issue." *Id*. at 880 (quoting *Reed v. Goertz*, 598 U.S. 230, 235-36 (2023)). "[A] violation of the Takings Clause occurs 'at the time of taking.'" *Wilson v. Hawaii*, -- U.S. --, 145 S. Ct. 18,

17

20 (2024) (quoting *Knick*, 588 U.S. at 194 (2019).  The property interest that gives rise to the takings claim alleged here is the surplus proceeds Wayne County kept after the foreclosure sales occurred.  *See Grainger Jr.*, 2021 WL 790771, at *6 (citing *Rafaeli*, 952 N.W.2d at 462 ("Indeed, a former property owner only has a right to collect surplus proceeds from the tax-foreclosure sale; that is, a former property owner has a compensable takings claim if and only if the tax-foreclosure sale produces a surplus"); *Santana v. Cnty. of Wayne*, No. 22-12376, 2023 WL 5655511, at *3 (E.D. Mich. Aug. 31, 2023).  Unless and until a surplus was gained from the sale, there was no property to take.

As the Michigan Supreme Court explained in *Rafaeli*, the proceeds of a tax auction sale exceeding the amount of property taxes owed and other charges and fees "is a separate property right that survives the foreclosure process."  952 N.W.2d at 476.  The *Rafaeli* Court further explained that "a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus.  Once the sale produces a surplus, the former owner may make a claim for the surplus proceeds."  *Id.* at 477 (emphasis added).

Thus, as this Court previously held, the statute of limitations began to run when Wayne County sold the property and a surplus was secured that was not returned to the former property owner.  The Court does not find that it erred in reaching this holding.  *Hall* does not compel a different conclusion as there was no

18

tax auction sale in that case. *See Hall*, 51 F.4th at 196. As the Sixth Circuit explained in *Hall*, "the act of taking is the event which gives rise to compensation" and that event in *Hall* was "the County's taking of 'absolute title' to the plaintiffs' property[.]" In comparison, where there is a tax auction sale, the right to compensation only arises *if* there is a surplus *and* that is not returned to the former owner of the property. *See Rafaeli supra*. So, that is the event which triggers the taking for the named plaintiffs here.

For Bowles, that date was November 11, 2017. She initiated this lawsuit on October 22, 2020, before the three-year limitations period ran. Her claim is not time barred.

Wayne County argues that *American Pipe* tolling could not apply to toll the named plaintiffs' claims based on *Wayside Church* because no named plaintiff in *Wayside Church* had standing to sue Wayne County. Bowles, however, had standing to bring the current putative class action on behalf of a class of owners whose properties were foreclosed by Wayne County and sold at a tax auction sale, which includes Myers, Sutton, and Johnson. The question, then, is whether the statute of limitations had yet expired on their claims when Bowles initiated this action

Myers' and Sutton's properties were sold at a tax auction sale on October 10, 2019. (*See* ECF No. 83 at PageID.1714 ¶ 36; *id.* at PageID.1715 ¶ 41.) The statute

19

of limitations ran for 152 days, until March 10, 2020, when the Michigan Supreme

Court's COVID-19 tolling orders took effect.  *See Howard v. Onion*, No. 21-3515,

2022 WL 2065950, at \*2 (6th Cir. May 17, 2022) (citing *Estate of Abdullah ex rel.*

*Carswell v. Arena*, 601 F. App'x 389, 394 (6th Cir. 2015)) (tolling the plaintiff's

§ 1983 claim based on the State's COVID-19 emergency relief statute); *see also*

*Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2014)

(explaining that state tolling provisions apply to § 1983 actions unless they are

inconsistent with federal law or policy).  The limitations period resumed on June

20, 2020, when the tolling orders were lifted, and it ran for another 124 days until

Bowles filed this putative class action on October 22, 2020.

Under *American Pipe* tolling, the statute of limitations stopped when Bowles

filed her complaint, and it remained tolled until class certification was denied.  *See*

*Crown, Cork & Seal Co. v.* Parker, 462 U.S. 345, 354 (1983).  That has not

occurred.  The Sixth Circuit reversed this Court's order certifying a class; but, it

did not hold that the motion for class certification should have been denied.

Instead, it remanded for further proceedings consistent with its order to determine

if class certification is appropriate.  Thus, the clock had not run on Myers' or

Sutton's claims when Bowles moved to add them as named Plaintiffs.

Johnson's property was sold at a tax auction sale on November 16, 2018.

(*See* ECF No. 83 at PageID.1716 ¶ 46.)  The statute of limitations ran from then

20

until March 10, 2020, when the Michigan Supreme Court tolled the statutes of limitations. At that point, 480 days (i.e., 15 months and 23 days) of the limitations period had run. The limitations period continued to run on June 20, 2020, for another 124 days (i.e., 4 months and 2 days) until Bowles filed this putative class action lawsuit. Approximately 16 months of the three-year limitations period remained when Bowles moved to add Johnson as a named Plaintiff. His claim also is not time barred.

Thus, regardless of whether the three-year limitations period for the named plaintiffs' § 1983 takings claims was tolled by *Wayside Church*, the claims are not time barred. For that reason, and because doing so would render an advisory opinion, the Court declines Wayne County's request to clarify the scope of *Wayside Church* tolling.

### C.   Whether the GPTA is the Exclusive Mechanism for Recovery

Wayne County seeks dismissal of the Third Amended Complaint contending, as it did previously, that § 78t provides the exclusive mechanism for owners of foreclosed property to claim the surplus from a tax auction sale. Wayne County relies again on the Sixth Circuit's holding in *Howard*, that the Michigan legislature's amendments to the GPTA, providing procedures for collecting surplus proceeds, prevents a taking from occurring. *Id.* at 572. As the Michigan Supreme Court has held that the amendments apply retroactively, Wayne County contends

21

that the holding in *Howard* applies equally to owners whose properties were foreclosed before the amendments' effective date.

This Court finds no reason to disturb its previous holding on this issue. Section 78t does not preclude an owner of foreclosed property from pursuing a § 1983 takings claim to recoup any surplus proceeds from the tax auction sale where the foreclosure and sale preceded the GPTA's amendments.  Those property owners had already suffered an unconstitutional taking when the amendments became effective.  *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 639 (2023) (finding that a taking occurs where a foreclosure sale generates surplus proceeds, and the State offers no mechanism for the former owner to claim those proceeds).  The amendments did not erase the fact that an unconstitutional taking had occurred. They simply provided one available avenue of relief for former property owners who already suffered a constitutional injury.  In *Howard*, in comparison, because the amendments were already in place, "they *prevent[ed]* a taking from happening in the first place."  133 F.4th at 572.

The Michigan legislature expressly stated in § 78t that it was the "exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds *under the laws of this state*."  Mich. Comp. Laws § 78t(11) (emphasis added).  As the Sixth Circuit interpreted this language in *Howard*, "the Michigan Legislature meant only to restrict owners' *state* remedies for seeking any surplus."  133 F.4th at

22

572.  The Supreme Court and Sixth Circuit have held that the existence of a state remedy does not bar a § 1983 takings claim.  *Knick*, 588 U.S. at 191; *Bowles*, 121 F.4th at 555.

As the Supreme Court explained in *Knick*:

> The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force.  The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right.  And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983.

588 U.S. at 191.  The Sixth Circuit already told Wayne County in the present matter that § 78t does not preempt § 1983 takings claims.  *See Bowles*, 121 F.4th at 555 (citing *Knick*, 588 U.S. at 185).  Again, Wayne County argued on appeal that the GPTA's statutory process "preempts a federal suit," to which the Sixth Circuit responded:  "It does not and cannot."  *Id*. (citing *Knicks*, 588 U.S. at 185).

Therefore, the Court rejects Wayne County's argument that the Third Amended Complaint fails to state a viable takings claim because of the available state remedy available in § 78t.

23

## IV.    Conclusion

For the reasons discussed, Wayne County fails to identify a palpable defect in this Court's June 4, 2025 decision, the correction of which results in a different disposition of this case.  Wayne County also fails to show that the Third Amended Complaint must be dismissed.

Accordingly,

**IT IS ORDERED** that Wayne County's motion for reconsideration (ECF No. 82) and motion to dismiss (ECF No. 92) are **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 18, 2026

24